UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GREGG THOMPSON,

Plaintiff,

- against -

THE CITY OF NEW YORK, OFFICER REYNOLDS, and POLICE OFFICERS JOHN DOES 1-4,

Defendants.

---

**MEMORANDUM DECISION AND ORDER**

24-cv-6947 (BMC)

**COGAN**, District Judge.

In a twist on the classic proverb, plaintiff in this action brought a gun to a chainsaw fight. The police-officer defendant, crediting the post-fight testimony of plaintiff's saw-revving adversaries, subsequently arrested plaintiff for criminal menacing. Plaintiff then sued. Because the officer was constitutionally permitted to take his pick of the combatants' conflicting accounts, defendants' motion for summary judgment on plaintiff's sole remaining claim is granted.

**BACKGROUND**

The fight central to this case began, as many fights in New York City do, with a poorly parked car. Defendant Demetrius Reynolds, a New York City Police Officer, and his partner Officer Alvarado responded to a radio transmission reporting that an individual was threatening others with a firearm at plaintiff Gregg Thompson's home. When they arrived, another officer was already on the scene; he had responded to a separate call reporting that "a male was threatened by numerous men, one of whom had a chainsaw." Alvarado first spoke with a group

of landscapers outside of Thompson's home. One of the landscapers said that Thompson pulled a gun on the workers after a heated argument over parking. The landscaper, fearing for his life, hid behind a car and called 911.

Reynolds then asked Thompson for his side of the story. As Thompson told it, some landscapers had parked their truck in front of his driveway, blocking the entrance. After Thompson's wife asked them to move the truck so she could pull her car into the garage, the landscapers began to verbally abuse her. Thompson soon intervened, convinced the landscapers to move the vehicle, and directed his wife to back her car into the driveway. According to Thompson, the landscapers nevertheless "use[d] profane language and insult[ed]" his wife as she drove. This led to a verbal altercation between Thompson and the landscapers, which led to a landscaper pushing Thompson, which led to Thompson pushing back, which led to a landscaper punching Thompson in the ribs. Then, Thompson went on, one of the landscapers revved a chainsaw and began to chase Thompson's wife and daughter around the house. It was at this point, he told Reynolds, that he entered the house, retrieved his peace officer badge and gun, and with his gun pointed downwards, instructed the landscapers to drop the chainsaw. At some point, Thompson's daughter called the police.

After hearing from both sides, the officers asked Thompson to retrieve his gun, and Thompson handed the weapon to Reynolds. Reynolds also viewed Ring camera footage of the conflict. The footage depicted an argument between the landscapers and Thompson's wife, an argument and ensuing fight between Thompson and the landscapers, Thompson retreating into his house, and finally Thompson returning to the street with a pistol in his hand, approaching the

landscapers. Although one landscaper was visibly revving his chainsaw, the tape did not show the landscapers chasing anyone.

Reynolds ultimately arrested Thompson and brought him back to the precinct for booking. Thompson was charged with, among other offenses, Menacing in the Second Degree, N.Y. Penal Law § 120.10. He was released after a few hours, and the district attorney declined to press charges.

Thompson then filed this suit. His complaint asserted eight claims against Reynolds, the City, and several unnamed officers. He has since withdrawn seven of those claims, leaving only a claim for false arrest under 42 U.S.C. § 1983. Having completed discovery, defendants now move for summary judgment.

**DISCUSSION**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (cleaned up).

A police officer is liable for false arrest under § 1983 when "(1) the [officer] intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citation omitted). The first three of these

elements are rarely contested and are not contested here. Instead, the parties zero in on whether the arrest was privileged and, specifically, whether Reynolds had probable cause to believe Thompson committed a crime, which is a "complete defense" to false arrest. Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012), as amended (Dec. 4, 2012) (cleaned up).

"Probable cause to arrest exists when the officers have . . . reasonably trustworthy information as to[] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007) (citations omitted). "[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Washington v. Napolitano, 29 F.4th 93, 105 (2d Cir. 2022) (quotation omitted). "When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (citation omitted). These circumstances are rare, such as when the officer knows of "a bitter prior relationship" between the victim and the accused that "gives rise to a motive for a false accusation" or when the victim is visibly cognitively impaired. Jeanty v. City of New York, No. 23-cv-9472, 2024 WL 5236462, at *17 (E.D.N.Y. Dec. 28, 2024) (quotation omitted); see also Moroughan v. City of Suffolk, 514 F. Supp. 3d 479, 499-500, 522 (E.D.N.Y. 2021). Even then, an officer need not discredit the victim; he need only "investigate further." Sankar v. City of New York, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (quotation omitted).

New York law provides that a person is guilty of second-degree criminal menacing when he "intentionally places or attempts to place another person in reasonable fear of physical injury,

serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol . . . or other firearm." N.Y. Penal Law § 120.14. So, in doctrinal terms, the relevant question is this: armed with all facts that Thompson's evidence suggests were available to a reasonable officer at the time of arrest, could such an officer have concluded that Thompson intentionally placed at least one of the landscapers in fear of injury by displaying his gun? The answer is a resounding yes.

In fact, to reach that conclusion, a reasonable officer would need little more than Thompson's own account of the event. Thompson admitted to Reynolds that he "pulled it on them," *i.e.*, that he "display[ed] a deadly weapon" to the landscapers. Id. He admitted that he did so in response to the landscapers threatening his family with a chainsaw, which suggests he "intended to place" the landscapers in "fear of physical injury," if not "death." Id. And he admitted that he approached the landscapers with the weapon, confirming their fear of injury was a "reasonable" one. Id. Of course, Thompson told Reynolds that he never meant to threaten the landscapers, but Reynolds had reasons to disbelieve that: Reynolds was responding to a report of a man threatening others with a gun, the landscaper insisted that Thompson wielded the gun as a threat, and the Ring camera footage contradicted Thompson's claims that the landscapers were chasing his wife and daughter with the chainsaw.

Besides, although Thompson may well have been attempting to protect his family, his good intentions do not rule out the possibility that he protected his family by intentionally threatening the landscapers. In fact, that is seemingly what occurred here: why else would Thompson have retrieved his firearm, if not to instill some fear into the landscapers that might cause them to leave his wife and daughter alone? Sure, Thompson could argue to a jury that his

intentional conduct was justified by self-defense, but Reynolds was "not required to explore and eliminate every theoretically plausible claim of innocence" before making the arrest. Washington, 29 F.4th at 105. That is especially true given the facts suggesting Thompson *did not* draw his weapon in self-defense: by the time he drew his gun, for instance, the landscapers were no longer revving the chainsaw. A reasonable officer would have been skeptical that Thompson "actually believed that he" or his family were "threatened with the imminent use of deadly physical force" when he returned to the driveway with his gun. People v. Goetz, 68 N.Y.2d 96, 113, 506 N.Y.S.2d 18 (1986).

Thompson's main riposte to the overwhelming undisputed evidence stacked against his false arrest claim is that Reynolds should not have credited the landscaper because the landscaper is "a member of a group that had behaved . . . grievously" by blocking the driveway, "assaulting" Thompson, and "brandishing a chainsaw in order to threaten and intimidate" the Thompson family. Yet this so-called grievous behavior neither "give[s] rise to a motive for a false accusation," Jeanty, 2024 WL 5236462, at *17, nor implies the landscaper's "cognitive abilities were affected," Moroughan, 514 F. Supp. 3d at 522. His coworkers' violent threats do not indicate that the landscaper had a propensity to lie, that he held some bitter personal vendetta against Thompson, or that he was mentally incapable of accurately recounting the fight. In any event, Reynolds did not rely solely on the landscaper's account; he "investigate[d] further." Sankar, 867 F. Supp. 2d at 306 (quotation omitted). He took Thompson's statement, inspected Thompson's gun, and he reviewed the Ring camera footage.

Indeed, retreating from the allegation in his complaint that "the police officers didn't see the [Ring camera] videos," Thompson admits in his summary judgment papers that they did.

Thompson now takes a new tack, claiming that the videos exculpate him and that Reynolds thus "disregard[ed] plainly exculpatory evidence" when he made the arrest. See Triolo v. Nassau Cnty., 24 F.4th 98, 106 (2d Cir. 2022) (citation omitted). The footage, Thompson argues, "clearly shows that [he] explicitly avoided pointing his gun at the direction of any person" and that the physical altercation started when Thompson was "shoved by one of the landscapers." Still, his generous characterization of the footage is not enough.[1] Thompson may not have aimed the gun at the landscapers, but he indisputably "display[ed]" it in their vicinity, which is all the criminal statute requires. Cf. People v. Nwogu, 22 Misc. 3d 201, 203, 871 N.Y.S.2d 824 (N.Y. Crim. Ct. 2008) (dismissing an indictment alleging only that the victim "observed the handle of a knife on the back of defendant's waistband"); People v. Iftikhar, 185 Misc. 2d 565, 568, 713 N.Y.S.2d 671 (N.Y. Crim. Ct. 2000) (dismissing an indictment alleging only that the defendant "fired a gun" because "[a]s far as the court can tell, defendant might have been a block away [from the victim] at the time" (cleaned up)). And whether the landscapers started the fight is immaterial. The statute prohibits intentional conduct, which Thompson all-but conceded to Reynolds. Again, who started the fight could be relevant to a self-defense argument, but it does not defeat probable cause.

Thompson lastly faults Reynolds for failing to "discuss with witnesses what they had witnessed." His objection does not hold water for several reasons. For one, Reynolds *did*

---

[1] Despite Thompson's claims, whether the landscaper pushed him first is not at all "clear[]" from the footage, and even at summary judgment, the Court must "view[] the facts in the light depicted by the videotape." See Scott v. Harris, 550 U.S. 372, (2007). The tape here clearly shows Thompson pushing a landscaper, but the landscaper is obstructed from the camera's view by Thompson's body. Maybe the landscaper did initiate physical contact, but a reasonable juror may not find as much. However, rather than wade into these muddy waters, the Court simply adopts Thompson's interpretation because defendants are still entitled to summary judgment.

"discuss with witnesses what they had witnessed" – namely, the landscaper and Thompson. Perhaps Thompson is contending that Reynolds should have additionally interrogated Thompson's wife, Thompson's daughter, and any neighbors that might have caught a glimpse of the conflict. But at best, the other witnesses would have corroborated Thompson's story, and a reasonable officer still could have discredited those accounts in favor of the landscaper's version of events. See Koester v. Lanfranchi, 288 Fed. Appx. 764, 766 (2d Cir. 2008). Most importantly, though, Reynolds was not required to "investigate further" because his other observations were "not inconclusive or otherwise suspect." Tretola v. Cnty. of Nassau, 14 F. Supp. 3d 58, 71 (E.D.N.Y. 2014) (citations omitted). No reasonable jury could find that he lacked probable cause to arrest Thompson for criminal menacing.

## CONCLUSION

For these reasons, defendants' motion for summary judgment is granted.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
August 7, 2025